## IN THE UNITED STATES DISTRICT COURT

### FOR THE DISTRICT OF KANSAS

DAVID U. JONES,                    )
                                   )
                Petitioner,        )      **CIVIL ACTION**
                                   )
v.                                 )      No. 05-3248-MLB
                                   )
DAVID MCKUNE,                      )
                                   )
                Respondent.        )
_____)


### MEMORANDUM AND ORDER

## I.  INTRODUCTION

This case comes before the court on petitioner's application for a writ of habeas corpus under 28 U.S.C. § 2254. (Doc. 1.)  The matter has been fully briefed and is ripe for decision. (Docs. 2, 16.)  The application is DENIED for reasons set forth herein.

Petitioner was convicted of rape following a bench trial in state court and sentenced to 220 months in prison.  In a federal habeas proceeding, the state court's factual findings are presumed correct and petitioner bears the burden of rebutting that presumption by clear and convincing evidence.  28 U.S.C. § 2254(e)(1).  Accordingly, the court incorporates the Kansas Court of Appeals' version of the facts:

> Defendant was convicted of being one of four men who raped C.F. in a hotel room.  The victim testified that she had been drinking and had passed out in the hotel room the night before. When she awoke, defendant was in the hotel room with her.  Shortly thereafter, three other individuals entered the hotel room.
> According to C.F., she did not know two of the individuals.  Those two men sat down on either side of her and held her down.  While these individuals held her down, one of the other two men raped her.  After than man finished, defendant raped C.F.  The victim testified that

> although her eyes were closed during the rape,
> she knew that defendant was the second man to
> rape her because he was standing beside the bed
> while the other individual raped her.  She also
> testified that she felt a difference in the men
> who were raping her and that the two men who were
> holding her down continued to hold her down as
> the second man raped her.
>      The only testimony presented by the State
> during its case in chief was the testimony of the
> victim.    Three witnesses were presented by
> defendant in an attempt to discredit her story.
> The trial court chose to believe the testimony of
> the victim and convicted defendant of raping C.F.

State v. Jones, No. 84,395 (Kan. Ct. App. June 22, 2001) (Jones I).

The Kansas Court of Appeals affirmed his conviction on direct appeal, and the Kansas Supreme Court denied review.  Thereafter, petitioner sought post-conviction relief under K.S.A. 60-1507.  The state district court denied relief, the Kansas Court of Appeals affirmed, and the state supreme court denied review.  Jones v. State, No. 90,390 (Kan. Ct. App. Sept. 17, 2004) (Jones II).  Petitioner was represented by counsel throughout his state proceedings.  See id. at 2; Jones II, Br. of Appellant (submitted by counsel).

Having failed at every turn, petitioner now turns to the federal courts seeking review of his conviction.  Nonetheless, this court's ability to consider collateral attacks on state criminal proceedings is circumscribed by 28 U.S.C. § 2254, as amended by the Antiterrorism and Effective Death Penalty Act of 1996 (AEDPA).  Under the highly deferential standard set forth in AEDPA, if petitioner's claim has been decided on the merits in a state court, a federal habeas court may only grant relief under two circumstances: 1) if the state court decision was "contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court

-2-

of the United States," 28 U.S.C. § 2254(d)(1); or 2) if the state

court decision "resulted in a decision that was based on an

unreasonable determination of the facts in light of the evidence

presented in the State court proceeding." Id. § 2254(d)(2).

> A state court decision is "contrary to"
> Supreme Court precedent in two circumstances: (1)
> when "the state court applies a rule that
> contradicts the governing law set forth in [the
> Court's] cases"; or (2) when "the state court
> confronts a set of facts that are materially
> indistinguishable from a decision of [the] Court
> and nevertheless arrives at a result different
> from" that reached by the Court. Williams v.
> Taylor, 529 U.S. 362, 406, 120 S. Ct. 1495, 146
> L. Ed. 2d 389 (2000). A state court decision
> constitutes an "unreasonable application" of
> Supreme Court precedent if "the state court
> identifies the correct governing legal principle
> from [the] Court's decisions but unreasonably
> applies that principle to the facts of the
> prisoner's case." Id. at 413, 120 S. Ct. 1495.
> Thus, "[u]nder § 2254(d)(1)'s 'unreasonable
> application' clause, . . . a federal habeas court
> may not issue the writ simply because that court
> concludes in its independent judgment that the
> relevant state-court decision applied clearly
> established federal law erroneously or
> incorrectly. Rather, that application must also
> be unreasonable." Id. at 411, 120 S. Ct. 1495;
> see also Thomas v. Gibson, 218 F.3d 1213, 1219-20
> (10th Cir. 2000) (discussing Williams).
> Finally, a state prisoner seeking habeas
> relief based on alleged erroneous factual
> determinations must overcome by clear and
> convincing evidence the presumption of
> correctness afforded state court factual
> findings. See 28 U.S.C. § 2254(e)(1); Smith v.
> Mullin, 379 F.3d 919, 924-25 (10th Cir. 2004).

Hamilton v. Mullin, 436 F.3d 1181, 1186 (10th Cir. 2006). An inherent

limitation to review under § 2254 is that a habeas court will only

consider alleged violations of federal law. Estelle v. McGuire, 502

U.S. 62, 67-68, 112 S. Ct. 475, 479-80 (1991). Moreover, the court

will not normally consider federal questions unless they have first

been presented to the state courts. <u>Picard v. Connor</u>, 404 U.S. 270, 277-78, 92 S. Ct. 509, 513 (1971); <u>but see</u> 28 U.S.C. § 2254(b)(2) (permitting <u>denial</u> on the merits, despite failure to exhaust state remedies).

**II.  ANALYSIS**

A.  Petition's Motion to Stay Proceedings

After this case was fully briefed and ripe for decision, petitioner filed a motion asking the court to stay the case while he returned to state court to exhaust two of his federal habeas claims. (Doc. 19.)  One of those claims is based on an allegation of prosecutorial misconduct during his state criminal trial, and the other claim involves allegations of ineffective assistance of counsel. <u>Id.</u> at 1.  In his answer, respondent contended that these claims were procedurally defaulted and could not now be considered by a federal habeas court.  (Doc. 16 at 12, 19.)

Defendant relies on <u>Rhines v. Weber</u>, 544 U.S. 269, 125 S. Ct. 1528, 161 L. Ed. 2d 440 (2005), for its conclusion that a federal habeas court may stay a mixed petition (that is, one containing both exhausted and unexhausted claims) while the petitioner returns to state court to pursue the unexhausted matters.  (Doc. 19 at 2.)  While <u>Rhines</u> does recognize that a district court has discretion to stay a mixed petition, that discretion is tightly circumscribed.  "[S]tay and abeyance should be available only in limited circumstances." <u>Rhines</u>, 544 U.S. at 277, 125 S. Ct. at 1535.  In order for a federal habeas court to consider staying an application under section 2254, the petitioner must show three things: 1) good cause for failing to exhaust his claims in the first instance; 2) that the claims are

-4-

potentially meritorious; and 3) that he has not intentionally engaged in dilatory litigation tactics.  Id. at 278, 125 S. Ct. at 1535.  A district court abuses its discretion if it grants a stay when the unexhausted claims plainly lack merit; by contrast, it is probably an abuse of discretion to deny a stay when a petitioner has established all three of the aforementioned elements.  Id.

Implicit in Rhines' holding is an assumption that there is some state remedy available which the petitioner may pursue while his federal habeas case is stayed.  Tenth Circuit precedent in the wake of Rhines suggests that that case did nothing to undermine the case law addressing the proper handling of claims that have been procedurally defaulted in the state system.  See, e.g., Rush v. Friel, 155 Fed. Appx. 398, 400 (10th Cir. Nov. 14, 2005); Murphy v. McKune, 139 Fed. Appx. 114, 116 (10th Cir. July 7, 2005); Pecht v. Utah, 135 Fed. Appx. 136, 138 (10th Cir. May 25, 2005).  As further explained in the next section, the court finds that the claims for which petitioner seeks a stay have been procedurally defaulted - that is, even if permitted to return to the state system, those courts would not consider the merits of his arguments.  These claims are therefore exhausted for purposes of this case, and it would be improper to delay proceedings by granting a stay.  Petitioner's motion for a stay is accordingly DENIED.

B.  Exhaustion of State Remedies

Where, as here, the state provides an effective means to correct alleged errors in a petitioner's state criminal proceedings, AEDPA requires each petitioner to exhaust those state remedies before bringing a federal habeas petition.  28 U.S.C. § 2254(b)(1).  While

there was a time when respondent's failure to raise the exhaustion issue would have constituted a waiver, <u>Demarest v. Price</u>, 130 F.3d 922, 934 (10th Cir. 1997), AEDPA mandates exhaustion of state remedies unless the respondent expressly waives that requirement.  28 U.S.C. § 2254(b)(3); <u>see also</u> <u>Ellis v. Hargett</u>, 302 F.3d 1182, 1189 (10th Cir. 2002).  In this case, respondent asserts that petitioner failed to exhaust two claims of error: (1) the prosecutor committed misconduct by knowingly using perjured testimony; and, (2) petitioner's trial counsel was ineffective for failing to locate a particular witness and have her available to testify at the trial. (Doc. 16 at 12, 19.)  Petitioner essentially concedes that these two claims have not been exhausted by asking the court to stay this case while he presents these issues to the state courts.  (Docs. 19, 21.) Actually, petitioner asserts that he presented these claims to the state courts, but the claims were not addressed.  (Doc. 2 at 10, 21.) Thus, although he now asks for an opportunity to return to state court to exhaust the matters, he originally argued that the claims were procedurally defaulted and therefore exhausted for purposes of this case.  <u>Id.</u> at 10, 21.

In determining whether petitioner presents valid federal claims, the court will liberally construe his <u>pro se</u> filings.  <u>Cummings v. Evans</u>, 161 F.3d 610 (10th Cir. 1998).  On the other hand, petitioner was represented by counsel in all of his state court proceedings; thus, when considering whether he fairly presented his federal claims in the state system, no such liberal construction is warranted. Nonetheless, the court will liberally construe any <u>pro se</u> filings in the state system.

The court has reviewed petitioner's brief on direct appeal to the Kansas Court of Appeals, which was filed by counsel, as well as both counsel's brief and petitioner's pro se brief to the Kansas Court of Appeals on his state habeas claims.   Contrary to the assertions petitioner now makes, none of those three briefs raised either of these two claims.  (Docs. 2 at 9-10, 21.)   There is not even a hint of a claim of prosecutorial misconduct.  With respect to the claim of ineffective assistance of trial counsel, the two state habeas briefs make only a momentary, veiled reference to this claim.   In petitioner's counsel's brief, the only possible reference to this claim read as follows:

> [Trial counsel] failed to adequately investigate the case.   He failed to use professional investigators to track and find missing witnesses and their stories and information then went unheard.  Crucial evidence on consensual contact between [petitioner] and the victim was lost due to ineffective preparation.

Jones II, Br. of Appellant at 17.   Similarly, in his pro se brief, development of this claim was limited to the following:

> [Petitioner] contends that trial counsel was ineffective because he failed to investigate the victim's reputation for veracity.
> The victim in the case was a runaway from a youth shelter for girls, who had a history of running away and a reputation for making false allegations of sexual abuse.  Counsel knew about the victim's background and her reputation for veracity, but he failed to conduct any investigation for such information.
>
> . . . .
>
> Here, counsel's failure to investigate the victim's reputation for veracity fell below an objective standard of reasonableness.  Evidence existed in the record which indicated that the victim had previously made false allegations of sexual abuse and that she was a chronic runaway

-7-

>           from the shelter where she lived.  Counsel did
>           not investigate this information and such
>           information was not utilized to its full extent
>           at the trial to test her credibility.  But for
>           counsel's failure to investigate the victim's
>           reputation for veracity, there is a reasonable
>           probability that the outcome of the trial would
>           have been different.

Jones II, Pro Se Br. of Appellant at 5-6.

In contrast with the vague generalizations undergirding this particular claim of ineffective assistance of counsel as presented to the state courts, petitioner now argues that counsel was ineffective for failing to locate and investigate a particular witness, Ms. Kareena Hickles, and for failing to call her to testify at trial. (Doc. 2 at 18-21.)  In his state court proceedings, petitioner never identified a particular witness whom he thought his attorney should have investigated and/or called to testify.

>           The exhaustion doctrine requires a state
>           prisoner to fairly present his or her claims to
>           the state courts before a federal court will
>           examine them.  Fair presentation of a prisoner's
>           claim to the state courts means that the
>           substance of the claim must be raised there. The
>           prisoner's allegations and supporting evidence
>           must offer the state courts a fair opportunity to
>           apply controlling legal principles to the facts
>           bearing upon his constitutional claim.
>           Therefore, although a habeas petitioner will be
>           allowed to present bits of evidence to a federal
>           court that were not presented to the state court
>           that first considered his claim, evidence that
>           places the claims in a significantly different
>           legal posture must first be presented to the
>           state courts.

Demarest, 130 F.3d at 932 (citations and internal quotation marks omitted).

In it patently obvious that petitioner failed to fairly present this particular claim of ineffective assistance of counsel to the

state courts.  The state court of appeals was never alerted to a particular witness whom petitioner thought was essential to his case, nor was there any hint as to how she might testify and what bearing that was likely to have on the case.  Instead, petitioner simply presented the state courts with conclusory allegations regarding trial counsel's failure to adequately investigate the case.

Further supporting the court's conclusion on this matter is the fact that in his federal habeas application, petitioner continues to press a separate claim that trial counsel was ineffective because he "failed to investigate the alleged victim's reputation for veracity." (Doc. 2 at 21.)  That is the claim that petitioner presented to the Kansas Court of Appeals in his pro se brief, as quoted supra.  Thus, it is obvious that his claim regarding trial counsel's failure to investigate and call Ms. Hickles is separate and distinct from this generalized claim about trial counsel's failure to investigate the victim's reputation for veracity.  The latter claim was presented to the Kansas Court of Appeals; the former claim was not.

Since neither the claim of prosecutorial misconduct nor the claim of ineffective assistance of trial counsel for failing to call Ms. Hickles was presented to the state courts, a federal habeas court would ordinarily be prohibited from considering them.  Picard, 404 U.S. at 277-78, 92 S. Ct. at 513.  Nevertheless, if petitioner would be procedurally barred from now asserting these claims in the state courts based on independent and adequate state grounds, his claims may be considered procedurally defaulted, and therefore exhausted, for habeas purposes.  Thomas v. Gibson, 218 F.3d 1213, 1221 (10th Cir. 2000).  Under those circumstances, the federal habeas court will only

consider these claims if petitioner can demonstrate "cause and prejudice or a fundamental miscarriage of justice." English v. Cody, 146 F.3d 1257, 1259 (10th Cir. 1998).

"A state procedural ground is independent if it relies on state law, rather than federal law, as the basis for the decision. For the state ground to be adequate, it must be strictly or regularly followed and applied evenhandedly to all similar claims." Hickman v. Spears, 160 F.3d 1269, 1271 (10th Cir. 1998). The relevant Kansas procedural rule is K.S.A. 60-1507(c), which prohibits successive motions for review. Since petitioner already presented a motion for review under that statute, he is now barred from filing a subsequent motion. That prohibition not withstanding, Kansas has suggested that "exceptional circumstances" might warrant successive motions; however, "[e]xceptional circumstances . . . are those unusual events or intervening changes in the law which prevented the movant from being aware of and raising all of his alleged trial errors in his first post-conviction proceeding, and they must be such that the ends of justice can only be served by reaching the merits of the subsequent application." Brooks v. State, 25 Kan. App. 2d 466, 467, 966 P.2d 686, 688 (1998) (quoting Dunlap v. State, 221 Kan. 268, 270, 559 P.2d 788 (1977)); see also Butler v. Kansas, 2002 WL 31888316, at *2 (10th Cir. Dec. 30, 2002). There is nothing in the record that shows petitioner was precluded from raising either of these claims in his prior motion under K.S.A. 60-1507. Hence, that statute's bar against successive motions means that petitioner is now procedurally barred from raising this issue in the state system. Accord (Doc. 2 at 10 ("[I]t is apparent that the Kansas state courts would not consider the

merits of the [prosecutorial misconduct] claim at this juncture of the case); id. at 21 (same conclusion with respect to the ineffective assistance of counsel claim).   K.S.A. 60-1507 constitutes an independent and adequate state ground since it is a state statute generally applicable to all collateral attacks.   Therefore, these claims are procedurally defaulted, and may only be considered by this court upon a showing of cause for the default and resulting prejudice, or in order to prevent a fundamental miscarriage of justice.

Cause for default must be something external to petitioner and his counsel, "something that cannot fairly be attributed to [them]." Coleman v. Thompson, 501 U.S. 722, 753, 111 S. Ct. 2546, 2566, 115 L. Ed. 2d 640 (1991).   Petitioner essentially argues that his cause for default is that the Kansas Court of Appeals refused to address the claims, which were otherwise fairly presented to them. (Doc. 2 at 10, 21.)   As already noted, however, the court finds that these claims were not fairly presented in the state system.[1]

Finally, a fundamental miscarriage of justice in this context means that the petitioner is probably innocent of the crime. Phillips v. Ferguson, 182 F.3d 769, 774 (10th Cir. 1999).   Although, as discussed infra, the evidence against petitioner was not overwhelming, it was adequate to permit the trier of fact to convict him of the crime charged beyond a reasonable doubt.   Hence, the court finds no fundamental miscarriage of justice.   Therefore, the claims of

---

[1] The court need not consider whether the issues were presented to the state district courts.   Even if they were, by not preserving and presenting the issues to the state appellate court, petitioner abandoned those claims, and thereby failed to exhaust his state remedies. See Bear v. Boone, 173 F.3d 782, 784 (10th Cir. 1999).

prosecutorial misconduct and ineffective assistance of counsel for failing to investigate and call Ms. Hickles will not be considered on the merits.

C.  Sufficiency of the Evidence

Turning now to the merits of the remaining claims, petitioner argues that the evidence presented on the rape charge was insufficient to support a guilty verdict.  When considering the sufficiency of the evidence, the court views the evidence in the light most favorable to the prosecution.  Spears v. Mullin, 343 F.3d 1215, 1238 (10th Cir. 2003).  Under that standard, habeas relief may only be granted if "no rational trier of fact could have found proof of guilt beyond a reasonable doubt." Id. (quoting Jackson v. Virginia, 443 U.S. 307, 319, 324, 99 S. Ct. 2781, 61 L. Ed. 2d 560 (1979)).  Though it involves factual issues, a challenge to the sufficiency of the evidence is reviewed for legal error.  Id.  Accordingly, under AEDPA the court is limited to determining whether the Kansas Court of Appeals reasonably applied the Jackson standard in this case.  Id.

Under Kansas law, in order to convict petitioner of rape pursuant to K.S.A. 21-3502(a)(1)(A), the government must have proved that petitioner had intercourse with the victim, without her consent, when she was overcome by force or fear.  Although the Kansas Court of Appeals did not cite Jackson, it nevertheless identified and applied the Jackson standard, as described in State v. Mason, 268 Kan. 37, 39, 986 P.2d 387 (1999).  Jones I at 4.  Petitioner concedes as much. (Doc. 2 at 7.)  Instead, he argues that the Kansas Court of Appeals unreasonably applied Jackson to his case.  Id.

The state appellate court summarized the evidence as follows:

-12-

> We have reviewed the record in this case, and the victim testified without ambiguity or hesitation that she was held down on a bed by two men and forced to have sexual intercourse with defendant as well as with the other individuals in the room.

Jones I at 4.  The Kansas Court of Appeals found that this evidence was sufficient to sustain the conviction, rejecting petitioner's invitation to make credibility determinations between the witnesses. Id. at 4-5.

The state only called one witness in its case-in-chief: the alleged victim, C.F.  A review of her testimony shows that she testified unequivocally to the following facts.  Following a late-night party of drinking and using marijuana, C.F. found herself in a motel room with four men.  Two of those men held her down on the bed by her wrists, while a third man known as Manuel had forcible intercourse with her.  She identified petitioner as the fourth man in the room.  He stood at the foot of the bed while Manuel raped C.F. The victim testified that she closed her eyes during most of the assault, but was able to tell that different men were taking turns raping her because they would shift places, and there were differences in the way they felt and moved as each one took his turn.  She stated that she knew petitioner took his turn after Manuel finished because there was a definite switch between individuals raping her, but the two men who were holding her wrists did not let go.  Accordingly, she reasoned, since petitioner was the only other person in the room, he had to be the second man who raped her.  Id. at 10, 25-30, 33, 63-64.

It is clear that this testimony established all the elements of rape: that petitioner had intercourse with the victim, that it was not

-13-

consensual, and that it occurred while C.F. was overcome by force or
fear.   Petitioner makes much of the fact that the three defense
witnesses impugned C.F.'s credibility, suggested that she was
promiscuous, and testified that C.F. had engaged in consensual sexual
contact with petitioner earlier in the evening.   (Doc. 2 at 3.)
Indeed, Vassie Welch, Nicole Welch, and Lacole Welch all testified
that when they saw C.F. the morning after the alleged raped, she
appeared content and gave no indication that she had been raped the
prior night.   (R. Vol. VII at 88, 108, 143.)   Beyond that, the
testimony of Vassie and Lacole was only marginally relevant.[2]   By
contrast, Nicole testified that she was with C.F. at the motel the
night of the alleged rape.   Nicole testified that C.F. told her that
C.F. had performed oral sex on petitioner in the motel bathroom
earlier in the evening.   Id. at 132.   Nicole also testified that after
a while, most of the group at the motel moved to a different room down
the hallway, leaving C.F. alone with petitioner in the first room.
Id. at 133.   Nicole further testified that she returned to the first
room after a half-hour or so, where she found C.F. and petitioner in
bed engaged in consensual intercourse.   Id. at 134-36.   Collectively,
the import of Nicole's testimony was that C.F. was willingly engaging
in sexual activity with petitioner, and that her testimony regarding
a rape was simply not credible.

Be that as it may, Nicole suffered credibility problems of her
own.   She admitted that she lied to police when they first approached

---

[2] Trial counsel apparently had the same opinion of the relative
value of his witnesses.   He testified at the 60-1507 hearing that
Nicole Welch "was the most crucial" witness.   (R. Vol. X at 20.)

her to investigate this case.  <u>Id.</u> at 149-50.  Likewise, the trial judge noted that she gave inconsistent accounts of certain events during her trial testimony.  <u>Id.</u> at 164 (referring to testimony at 130, 132).   Finally, Nicole characterized petitioner and others allegedly involved in the crime as her "homeboys," meaning that they were her friends.  <u>Id.</u> at 167.

Ultimately, the trial judge was faced with assessing the credibility of these witnesses.  He summarized his reasoning at the end of the trial and concluded that C.F. was telling the truth.  <u>Id.</u> at 207-09.  He further noted that, even if Nicole's account of C.F.'s actions earlier in the evening was accurate, that was not dispositive regarding whether the rape occurred later that night.  The Welchs were not in the motel room during the time of the alleged rape.  The only person that was in that room during the time of the alleged rape who took the stand to testify was C.F.  The trial judge credited her testimony and found petitioner guilty of forcible rape.  <u>Id.</u>

This is something the trial court was entitled to do because credibility issues are the type of quintessential factual determinations that fall uniquely within the province of the trier of fact.  <u>See</u> <u>Cuyler v. Sullivan</u>, 446 U.S. 335, 342, 100 S. Ct. 1708, 1714-15, 64 L. Ed. 2d 333 (1980) ("'issues of fact' refers to what are termed basic, primary, or historical facts: facts in the sense of a recital of external events <u>and the credibility of their narrators</u> . . ." (emphasis added) (citations and some internal quotation marks omitted)).  Indeed, the Supreme Court has cautioned,

> As we have said on numerous occasions, the trial court's resolution of such [credibility] questions is entitled, even on direct appeal, to

> "special deference." E.g., Bose Corp. v.
> Consumers Union of U.S., Inc., 466 U.S. 485, 500,
> 104 S. Ct. 1949, 1959, 80 L. Ed. 2d 502 (1984).
> The respect paid such findings in a habeas
> proceeding certainly should be no less. See
> Marshall v. Lonberger, 459 U.S. 422, 434-435, 103
> S. Ct. 843, 850-851, 74 L. Ed. 2d 646 (1983).

Patton v. Yount, 467 U.S. 1025, 1038, 104 S. Ct. 2885, 2892, 81 L. Ed. 2d 847 (1984) (emphasis added) (footnote omitted); see also Lonberger, 459 U.S. at 434, 103 S. Ct. at 851 ("28 U.S.C. § 2254(d) gives federal habeas courts no license to redetermine credibility of witnesses whose demeanor has been observed by the state trial court, but not by them").[3]

Having before him testimony which, if believed, established every element of the crime of rape, the trial court was entitled to accept that testimony and convict petitioner of rape. The Kansas Court of Appeals' conclusion that there was sufficient evidence to support the conviction was not an unreasonable application of Jackson.

D.   Ineffective Assistance of Trial Counsel

The balance of petitioner's claims are that his trial counsel was constitutionally deficient for various reasons. A claim for ineffective assistance of counsel in violation of the Sixth Amendment requires petitioner to show that 1) his counsel's performance fell below an objective standard of reasonableness; and 2) but for his counsel's unreasonable errors, there is a reasonable probability that the outcome of the proceeding would have been different. Williams v. Taylor, 529 U.S. 362, 390-91, 120 S. Ct. 1495, 1511-12, 146 L. Ed. 2d

---

[3] Lonberger dealt with a prior version of section 2254; however, like the older version, the current version still affords a federal habeas court no license to re-evaluate credibility on a cold record.

389 (2000); <u>Strickland</u>, 466 U.S. at 688, 694, 104 S. Ct. 2052, 80 L.
Ed. 2d 674 (1984).  In evaluating the performance of trial counsel,
the Supreme Court provided the following guidance:

> A fair assessment of attorney performance
> requires that every effort be made to eliminate
> the distorting effects of hindsight, to
> reconstruct the circumstances of counsel's
> challenged conduct, and to evaluate the conduct
> from counsel's perspective at the time.  Because
> of the difficulties inherent in making the
> evaluation, <u>a court must indulge a strong
> presumption that counsel's conduct falls within
> the wide range of reasonable professional
> assistance</u>; that is, <u>the defendant must overcome
> the presumption that, under the circumstances,
> the challenged action "might be considered sound
> trial strategy."</u> <u>See</u> <u>Michel v. Louisiana</u>, supra,
> 350 U.S., at 101, 76 S. Ct., at 164.
>
> . . .
>
> Thus, a court deciding an actual ineffectiveness
> claim must judge the reasonableness of counsel's
> challenged conduct on the facts of the particular
> case, viewed as of the time of counsel's conduct.
> A convicted defendant making a claim of
> ineffective assistance must identify the acts or
> omissions of counsel that are alleged not to have
> been the result of reasonable professional
> judgment.  The court must then determine whether,
> in light of all the circumstances, the identified
> acts or omissions were outside the wide range of
> professionally competent assistance.  In making
> that determination, the court should keep in mind
> that counsel's function, as elaborated in
> prevailing professional norms, is to make the
> adversarial testing process work in the
> particular case.  At the same time, the court
> should recognize that counsel is strongly
> presumed to have rendered adequate assistance and
> made all significant decisions in the exercise of
> reasonable professional judgment.

<u>Strickland</u>, 466 U.S. at 689-90, 104 S. Ct. at 2065-66 (emphasis
added).  Thus, under this standard, counsel's performance is presumed
competent, and petitioner bears the burden of rebutting that

presumption.

In reviewing petitioner's claims, the Kansas Court of Appeals did not cite Strickland; instead, the state court relied on state decisions, but the standards set forth in those decisions are the Strickland standards. Jones II at 5-6; see also (Doc. 2 at 16 (where petitioner concedes that the court of appeals applied the Strickland standard).)

1.  Conflict of Pecuniary Interest

Petitioner first claims that he had a conflict of pecuniary interest with his trial counsel that rendered the representation constitutionally deficient. (Doc. 2 at 13.) Petitioner claims that, prior to being charged in this case, he nevertheless anticipated the need for representation and therefore paid trial counsel, Mr. Dan Phillips, a $3,700 retainer to secure his assistance should charges be filed. However, petitioner claims that after he was arrested for this alleged rape, trial counsel informed him that the money had already been spent to represent petitioner's brother in another matter. Petitioner alleges that he informed trial counsel that no more money was forthcoming, and that trial counsel indicated that he would not represent petitioner without additional payment. Nevertheless, petitioner concedes that after he informed the trial court of the problem, the judge appointed Mr. Phillips to represent him, and Mr. Phillips did so throughout the proceedings in the state district court. Petitioner claims that the fees paid to trial counsel under his appointment were less than Mr. Phillips would have earned had petitioner retained him, and that this created a conflict of pecuniary interest that resulted in trial counsel's performance

-18-

falling below constitutional standards.  <u>Id.</u> at 13-16.

     Petitioner summarizes this claim in two statements.  First, he states,

>           The Kansas Court of Appeals found that Petitioner
>     failed to show how an alleged fee dispute which
>     occurred prior to counsel's appointment rendered
>     counsel's performance deficient. . . .
>           The Court of Appeals erroneously held that
>     the  fact  that  trial  counsel  represented
>     Petitioner by appointment from the court showed
>     that  Petitioner  was  not  denied  effective
>     assistance  of  counsel  due  to  an  alleged  fee
>     dispute  which  occurred  between  them  prior  to
>     counsel's appointment.

(Doc. 2 at 16.)   Then he concludes his argument with a more abbreviated statement to the same effect:

>     Based on the foregoing, the Kansas Court of
>     Appeals  unreasonably  determined  that  the  fee
>     dispute between Petiitoner [sic] and his trial
>     counsel  did  not  render  counsel's  performance
>     deficient.

<u>Id.</u> at 17.  These statements make clear that this particular claim is attacking a factual determination, not a legal conclusion.  That is, petitioner claims that the state courts erred in determining, as a matter of fact, that the alleged fee dispute had no effect on trial counsel's performance.  Accordingly, the question presented is not whether the Kansas Court of Appeals correctly applied <u>Strickland</u> in determining that trial counsel's performance was adequate on this point, but whether the state appellate court's conclusion that there was no connection between the fee dispute and counsel's performance (regardless of the adequacy of that performance) was "an unreasonable determination of the facts in light of the evidence presented in the State court proceeding."  28 U.S.C. § 2254(d)(2).

     As stated previously, under AEDPA, a state court's factual

-19-

determinations are presumed correct, and a petitioner attacking a such a factual determination has the burden to prove that the decision was erroneous by clear and convincing evidence.  Id. § 2254(e)(1).  In the hearing on petitioner's state habeas case under K.S.A. 60-1507, trial counsel testified that there was no fee dispute between himself and petitioner.  Instead, Mr. Phillips testified that petitioner had specifically authorized him to use the retainer to represent petitioner's brother in an unrelated criminal matter.  Thereafter, when petitioner was charged in the underlying criminal case, petitioner informed Mr. Phillips that he could not afford to pay any additional fees.  Based on that information, Mr. Phillips testified that he asked the trial judge to appoint him as petitioner's counsel, and the trial judge did so.  Finally, Mr. Phillips testified that he never sensed a conflict of interest between himself and petitioner. (R. Vol. 10 at 7-10, 23.)

Although petitioner's testimony contradicted that of Mr. Phillips on some of these points, it was the province of the state habeas court to decide issues of credibility.  That court had to decide whether to believe the testimony of a former attorney, who had subsequently been disbarred for cocaine addition,[4] or the testimony of a self-identified "street hustler."  (R. Vol. X at 27.)  The state court chose to believe the former, finding that "Movant failed to establish how this situation [regarding the fee issue] effected Mr. Phillips' performance in any way."  Jones v. State, No. 02-C-0332, Order Den. Pet. for Relief Under K.S.A. 60-1607 at 3, (Doc. 109).  The Kansas Court of

---

[4] See In re Phillips, 272 Kan. 200, 32 P.3d 704 (2001).

-20-

Appeals upheld this determination, finding that the issue of credibility was solely the province of the state habeas court. <u>Jones II</u> at 8.

A federal habeas court does not stand to overturn state decisions based solely on credibility disputes, at least not those where the only evidence contrary to the state court's determination is petitioner's testimony that the other witness is lying. <u>Patton</u>, 467 U.S. at 1038, 104 S. Ct. at 2892; <u>Lonberger</u>, 459 U.S. at 434, 103 S. Ct. at 851  It was petitioner's burden to prove by clear and convincing evidence that the state court's factual finding - that any fee issues had no effect on the quality of the representation that trial counsel provided petitioner - was wrong.  He did not meet this burden.

2.  Failure to Investigate Victim's Reputation for Veracity

For his next claim of ineffective assistance of counsel, petitioner asserts that trial counsel failed to properly investigate the victim's reputation for veracity, and that this was an error of constitutional magnitude.  (Doc. 2 at 21.)  In rejecting this claim as meritless, the Kansas Court of Appeals found that petitioner had failed to develop a factual basis for this claim, and that his allegations were therefore conclusory. <u>Jones II</u> at 8.  Moreover, the state court concluded that trial counsel "challenge[d] the victim's veracity through vigorous and thorough cross-examination."  <u>Id.</u> Petitioner presents no challenge to the state court's factual determinations.  Instead, his argument is limited to the theory that the Kansas Court of Appeals unreasonably applied <u>Strickland</u> to his case.  (Doc. 2 at 21-24.)

A review of the record shows that the state appellate court correctly found that the allegations on this point were conclusory. Neither petitioner's counsel's brief to the state court of appeals, nor petitioner's <u>pro se</u> brief cited any evidence in the record to support their assertions that trial counsel failed to investigate the victim's reputation for veracity. Moreover, petitioner also failed to develop this theory at his state habeas hearing. A review of the transcript of that proceeding shows that, although trial counsel testified at the hearing, he was not examined on this issue.

By contrast, what the record does show is that trial counsel vigorously cross-examined the victim with respect to her truthfulness, and he introduced transcripts of prior testimony in which she contradicted herself. (R. Vol. VII at 52, 56, 58, 61-62.) Indeed, trial counsel was so effective at attacking the victim's integrity that, prior to the close of evidence, the prosecutor offered petitioner a plea agreement in which she would recommend probation. Petitioner foolishly rejected that offer. (R. Vol. X at 21-22.)

The court finds that petitioner failed to develop factual support for this claim in the state system. Accordingly, he failed to demonstrate that trial counsel's performance fell below an objective standard of reasonableness. Additionally, the fact that the prosecutor offered petitioner a plea agreement based on trial counsel's success at undermining the victim's credibility shows that, in any event, petitioner can show no prejudice on this point. The state court's application of <u>Strickland</u> to this claim was not unreasonable.

3. Failure to Seek Recusal of the Trial Judge

-22-

For his next point of error, petitioner claims that trial counsel was ineffective for failing to move for recusal of the trial judge. (Doc. 2 at 24.)  Petitioner argues that the trial judge had already heard the victim testify in previous hearings related to his case, and had therefore already formed an opinion as to the victim's veracity. Id. at 25. Accordingly, he argues, the trial judge was biased and was unable to give him a fair trial.  Id.

The Kansas Court of Appeals made short work of this claim, stating that

> [t]his argument is wholly speculative and contrary to the evidence presented at the 60-1507 hearing.  Specifically, trial counsel testified the judge informed the parties of his familiarity with the case but assured them he could approach the case with a "clear mind" and be completely objective.

Jones II at 9. Alternatively, the state court found that petitioner could show no prejudice because he introduced transcripts from those former proceedings, which the trial judge read during a recess. Therefore, even if the trial judge had not been involved in prior hearings related to petitioner's case, he nevertheless became privy to the victim's testimony therein at petitioner's behest.  Id.

The question presented here is whether the Kansas Court of Appeals' conclusion was reasonable in light of Strickland.  The question that court had to answer was, first, whether trial counsel's failure to seek recusal of Judge Wilbert was objectively unreasonable.

There are few constitutional bases for recusal.  See Aetna Life Ins. Co. v. Lavoie, 475 U.S. 813, 820, 106 S. Ct. 1580, 1584, 89 L. Ed. 2d 823 (1986). "[N]ot '[a]ll questions of judicial qualification . . . involve constitutional validity.  Thus matters of kinship,

-23-

personal bias, state policy, remoteness of interest, would seem generally to be matters merely of legislative discretion." Id. (quoting Tumey v. Ohio, 273 U.S. 510, 523, 47 S. Ct. 437, 441, 71 L. Ed. 749 (1927)) (emphasis added). In keeping with that standard, the Supreme Court has only recognized a handful of situations in which a judge's impartiality might be so impaired as to violate due process. Such situations include a showing of actual bias, In re Murchison, 349 U.S. 133, 136, 75 S. Ct. 623, 625 99 L. Ed. 942 (1955), or cases in which the judge has a direct financial interest in the outcome of the case. Tumey, 273 U.S. at 523, 47 S. Ct. at 441. Beyond those narrow circumstances, the requirements for recusal are ordinarily governed by statute. Aetna, 475 U.S. at 820, 106 S. Ct. at 1584.

Such was the situation in Liteky v. United States, 510 U.S. 540, 114 S. Ct. 1147, 127 L. Ed. 2d 474 (1994), a case relied on by both parties here. (Docs. 2 at 25; 16 at 21.) According to Liteky, opinions held by judges based on what they learned in earlier judicial proceedings do not automatically establish bias or prejudice. Id. at 551, 114 S. Ct. at 1155. Indeed, "[i]t has long been regarded as normal and proper for a judge to sit in the same case upon its remand, and to sit in successive trials involving the same defendant." Id. Moreover, "opinions formed by the judge on the basis of facts introduced or events occurring in the course of the current proceedings, or of prior proceedings, do not constitute a basis for a bias or partiality motion unless they display a deep-seated favoritism or antagonism that would make fair judgment impossible." Id. at 555, 114 S. Ct. at 1157. However, all these statements were made in a case addressing the necessity for recusal under a statute,

-24-

28 U.S.C. § 455. Id. at 541, 114 S. Ct. At 1150. Accordingly, these statement articulate some standards regarding recusal under a federal statutory scheme, not the Constitution. They were therefore irrelevant to the Kansas Court of Appeals' determination in this case. Alternatively, to the extent they might somehow be relevant, all these statements weigh against petitioner, and the state court decision could hardly be construed as an unreasonable application of Liteky.

Since petitioner has made no showing of actual bias, and does not allege that the Kansas Court of Appeals made an unreasonable factual determination in light of the evidence when it found that no actual bias existed, Jones II at 9, there was no constitutional basis for trial counsel to seek Judge Wilbert's recusal. Thus, trial counsel's performance could not be objectively unreasonable on that basis. See Martin v. Kaiser, 907 F.2d 931, 936 (10th Cir. 1990) (counsel not ineffective for failing to raise meritless argument).

That conclusion leaves only the question whether there was a state-law basis for recusal that would render trial counsel's failure to move for recusal objectively unreasonable. Under Kansas law, the relevant statute is K.S.A. 20-311d,[5] which provides, as follows:

> (a) If a party or a party's attorney believes that the judge to whom an action is assigned cannot afford that party a fair trial in the action, the party or attorney may file a motion for change of judge. The motion shall not state the grounds for the party's or attorney's belief. The judge shall promptly hear the motion informally upon reasonable notice to all parties who have appeared in the case. If the judge disqualifies the judge's self, the action shall

---

[5] K.S.A. 20-311 also mandates recusal when any party or attorney in the case is closely related to the judge by blood or marriage. That provision is not applicable in this case.

be assigned to another judge by the chief judge.
If the judge refuses to disqualify the judge's
self, the party seeking a change of judge may
file the affidavit provided for in subsection
(b). If an affidavit is to be filed it shall be
filed immediately.

(b) If a party or a party's attorney files an
affidavit alleging any of the grounds specified
in subsection (c), the chief judge shall at once
determine, or refer the affidavit to another
district judge for prompt determination of, the
legal sufficiency of the affidavit. If the
affidavit is filed in a district court in which
there is no other judge who is qualified to hear
the matter, the chief judge shall at once notify
the departmental justice for the district and
request the appointment of another district judge
to determine the legal sufficiency of the
affidavit. If the affidavit is found to be
legally sufficient, the case shall be assigned to
another judge.

(c) Grounds which may be alleged as provided in
subsection (b) for change of judge are that:

(1) The judge has been engaged as counsel in the
action prior to the appointment or election as
judge.

(2) The judge is otherwise interested in the
action.

(3) The judge is related to either party to the
action.

(4) The judge is a material witness in the
action.

(5) The party or the party's attorney filing the
affidavit has cause to believe and does believe
that on account of the personal bias, prejudice
or interest of the judge such party cannot obtain
a fair and impartial trial or fair and impartial
enforcement of post-judgment remedies. Such
affidavit shall state the facts and the reasons
for the belief that bias, prejudice or an
interest exists.

(d) In any affidavit filed pursuant to this
section, the recital of previous rulings or
decisions by the judge on legal issues or
concerning the legal sufficiency of any prior

> affidavits filed by counsel for a party in any
> judicial proceeding, or filed by such counsel's
> law firm, pursuant to this section, shall not be
> deemed legally sufficient for any belief that
> bias or prejudice exists.

The Kansas Supreme Court has articulated the standards for evaluating a motion under K.S.A. 20-311d as follows:

> "Where the defendant in a criminal action
> contends the trial judge was biased and partial,
> the determination as to whether the defendant
> received a fair trial involves a two-part
> analysis: (1) Did the trial judge have a duty to
> recuse under the Code of Judicial Conduct? (2) If
> he did have a duty to recuse and failed to do so,
> was there a showing of actual bias or prejudice
> to warrant setting aside the judgment of the
> trial court?"
>     The standard to be applied to a charge of
> lack of impartiality is: "whether the charge of
> lack of impartiality is grounded on facts that
> would create reasonable doubt concerning the
> judge's impartiality, not in the mind of the
> judge himself, or even, necessarily, in the mind
> of the litigant filing the motion, but rather in
> the mind of a reasonable person with knowledge of
> all the circumstances."

State v. Griffen, 241 Kan. 68, 72, 734 P.2d 1089, 1093 (1987) (quoting State v. Logan, 236 Kan. 79, Syl. ¶ 5, 86, 689 P.2d 778 (1984)). As this test plainly states, there can be no error when there is no showing of actual bias. See also State v. Alderson, 260 Kan. 445, 454-55, 922 P.2d 435, 444 (1996). It is therefore clear that any motion for recusal would be meritless, and counsel's failure to request recusal cannot be said to fall below an objective standard of reasonableness. The Kansas Court of Appeals' conclusion on this point was not an unreasonable application of Strickland, and petitioner's arguments to the contrary are rejected.

    4.  Drug Use

    For his last point of error, petitioner argues that trial counsel

-27-

was <u>per se</u> ineffective because he was addicted to cocaine during the representation and at the time of trial. (Doc. 2 at 27.) Petitioner relies on disciplinary decisions by the Kansas Supreme Court to support his claim. 1n 1996, trial counsel was placed on supervised probation for three years due to his cocaine addiction. <u>In re Phillips</u>, 260 Kan. 909, 916, 925 P.2d 435, 439 (1996). One of the terms of his probation was that he undergo monthly urinalyses to test for substance abuse. <u>Id.</u> at 915, 925 P.2d at 439. In 2001, the Kansas Supreme Court disbarred trial counsel for failing his third urinalysis. <u>In re Phillips</u>, 272 Kan. 200, 32 P.3d 704 (2001). Relying on these decisions and quite a bit of conjecture, petitioner argues that trial counsel must have been abusing cocaine during the representation, and that such substance abuse rendered counsel ineffective as a matter of law. (Doc. 2 at 27-33.)

The Kansas Court of Appeals found that petitioner failed to establish a factual basis for concluding that trial counsel was abusing drugs during the representation. Additionally, the court of appeals concluded that, even if trial counsel was abusing cocaine during the time he represented petitioner, there could be no showing of prejudice because counsel's performance at trial was so exemplary that he caused the prosecution to offer a plea agreement that involved no jail time. <u>Jones II</u> at 11.

As part of the basis for this claim of error, petitioner rehashes the argument that trial counsel was under a conflict of pecuniary interest. (Doc. 2 at 31.) The court has already ruled on that matter, and it has no place in this argument. Instead, the focus is solely on whether trial counsel was abusing drugs while he represented

petitioner, and whether any such drug abuse prejudiced petitioner.

The court agrees that petitioner has utterly failed to show any evidence that trial counsel was under the influence of drugs during the trial or during his preparations for the trial.  During the 60-1507 hearing, even though trial counsel was called to testify, he was never asked about his use of drugs during the representation.  (R. Vol. X at 3-23.)  This was the perfect opportunity to establish this fact, yet petitioner made absolutely no effort to do so.

Moreover, the Kansas Supreme Court decisions cast considerable doubt on whether trial counsel was using cocaine during the time he represented petitioner.  As noted previously, one of the terms of trial counsel's probation was that he undergo monthly urinalyses to detect drug use.  Phillips, 260 Kan. at 915, 925 P.2d at 439.  When he was disbarred in 2001, the Kansas Supreme Court noted that he had failed three urinalyses.  Phillips, 272 Kan. at 200, 32 P.3d at 705. When he was reinstated to the bar in 2005, the Kansas Supreme Court confirmed that, during his probationary period, he had been subjected to urinalyses on a monthly basis.  In re Phillips, 280 Kan. 262, 262, 121 P.3d 422, 423 (2005).

The fact that trial counsel was subjected to urinalyses on a monthly basis for at least three years,[6] and yet only failed three tests, suggests that he was drug-free for the vast majority of the

_____

[6] Trial counsel's probation was supposed to terminate on October 26, 1999.  See Phillips, 260 Kan. at 916, 925 P.2d at 439.  However, the Kansas Supreme Court did not issue a show cause order until August 2001.  It is unclear whether the supreme court delayed two years or more before merely issuing a show cause order, or whether trial counsel continued to subject himself to urinalyses beyond October of 1999.  The court assumes, for purposes of this decision, that all violations of his probation occurred prior to October 26, 1999.

time that he was on probation.  Petitioner's case was tried in May of 1999.  Thus, while it is theoretically possible that trial counsel was using drugs during the representation, there is simply no evidence to establish that this actually occurred.  Presumably, the disciplinary administrator had records regarding the urinalysis results, and certainly trial counsel could have been compelled to testify on this subject under penalty of perjury during the 60-1507 hearing.  Yet, petitioner failed to put forth any evidence on this subject, choosing instead to rely on wild speculation.  The Kansas Court of Appeals' conclusion that petitioner failed to establish the fact of trial counsel's substance abuse during the representation was not an unreasonable factual determination.

Likewise, the court agrees with the state appellate court's assessment of Strickland's prejudice prong.  The record shows that trial counsel's performance at trial was so impressive that it brought the prosecution to the negotiating table in the middle of the trial. In this plea negotiation, the prosecution was prepared to allow petitioner to plead guilty to a lesser charge and recommend probation. That was quite a concession in light of the fact that petitioner was facing something on the order of twenty years in the penitentiary if convicted at trial.  The Kansas Court of Appeals' conclusion that trial counsel's performance at trial was not prejudicial to petitioner was not an unreasonable application of Strickland.

## III.  CONCLUSION

For the foregoing reasons, petitioner's application for a writ of habeas corpus is DENIED.  Likewise, his request for an evidentiary hearing is also DENIED.  (Doc. 2 at 33.)  A motion for reconsideration

of this order under Local Rule 7.3 is not encouraged.  The standards governing motions to reconsider are well established.  A motion to reconsider is appropriate where the court has obviously misapprehended a party's position or the facts or applicable law, or where the party produces new evidence that could not have been obtained through the exercise of reasonable diligence.  Revisiting the issues already addressed is not the purpose of a motion to reconsider and advancing new arguments or supporting facts which were otherwise available for presentation when the original motion was briefed or argued is inappropriate.  Comeau v. Rupp, 810 F. Supp. 1172 (D. Kan. 1992).  Any such motion shall not exceed three pages and shall strictly comply with the standards enunciated by this court in Comeau v. Rupp.  The response to any motion for reconsideration shall not exceed three pages.  No reply shall be filed.  Identical requirements and restrictions shall apply to any application for certificate of appealability or any other submission, however styled, directed to this Memorandum and Order.

IT IS SO ORDERED.

Dated this  29th  day of August, 2006, at Wichita, Kansas.


s/ Monti Belot
Monti L. Belot
UNITED STATES DISTRICT JUDGE